IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

Michael Orapello,　　　　　　　 )
　　　　　　　　　　　　　　　　)
　　　　　 Plaintiff,　　　　　　 )
　　　　　　　　　　　　　　　　)
　　 vs.　　　　　　　　　　　　 )　　　　　 2:17-cv-0442-LSC
　　　　　　　　　　　　　　　　)
NANCY BERRYHILL,　　　　　　 )
Commissioner of　　　　　　　　 )
Social Security,　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　 Defendant.　　　　　　)

**MEMORANDUM OF OPINION**

## I.　　Introduction

The plaintiff, Michael Orapello, proceeding *pro se*, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability and Disability Insurance Benefits ("DIB"). Mr. Orapello timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Orapello was forty-nine years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school education. (Tr. at 179, 198). His past work experiences include employment as a letter carrier, police officer,

and a private investigator. (Tr. at 200, 212-15). Mr. Orapello claims that he became disabled on May 16, 2013, due to neck pain, shoulder pain, headaches, upper back pain, problems with both hands, and problems with his left arm. (Tr. at 199.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The

decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ first found that Mr. Orapello was insured through the date of his decision. (Tr. at 21.) He further determined that Mr. Orapello has not engaged in SGA since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's cervical spondylarthritis, status post anterior cervical fusion and plating C5-C6, retrolisthesis C6 relative to C7 vertebrae, left upper extremity weakness, history of bilateral shoulder surgeries with residual restriction of range of motion, and obesity are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 22.) The ALJ did not find Mr. Orapello's allegations to be totally credible, and he determined that he has the following RFC: light work except that he can only occasionally climb, balance,

stoop, kneel, and crouch; can never crawl; he can never perform overhead reaching; he can frequently handle with the left upper extremity; he must avoid concentrated exposure to extreme cold, humidity, and vibrations; and he cannot work around unprotected heights or hazardous moving machinery. (Tr. at 23).

According to the ALJ, Mr. Orapello is unable to perform any of his past relevant work, he is a "younger individual age 18-49," he has a "high school education," and he is able to communicate in English, as those terms are defined by the regulations. (Tr. at 26.) Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocational Rule 201.25 as a guideline for finding that there are a significant number of jobs in the national economy that he is capable of performing, such as cashier, packager, and ticket seller. (Tr. at 27). The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, from May 16, 213, through the date of this decision." (Tr. at 28).

## II.     Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone*

*v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its

entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Mr. Orapello alleges in his complaint, initial brief, and reply brief that the ALJ's decision should be reversed and remanded for several reasons. He contends that the ALJ erred with respect to the weight he afforded to the opinions of two of his treating physicians and to a non-examining medical expert. He also finds error in the weight the ALJ afforded to his treating chiropractor, who is considered a non-medical source. Additionally, he indicates that the ALJ should have accepted his subjective testimony of pain as true and, along the same lines, that the ALJ should have adopted the VE's testimony in response to a hypothetical question assuming that his subjective complaints were true.

### A. Weight Given to the Medical Opinions

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon

the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources, and non-treating medical sources over non-examining medical sources. *See* 20 C.F.R. §

404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

On the other hand, the opinions of a one-time examiner or of a non-examining source are not entitled to the initial deference afforded to a physician who has an ongoing treating relationship with a plaintiff. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Still, medical consultants or medical experts are highly qualified medical specialists who are experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. § 404.1527(e)(2)(iii), 416.927(e)(2)(iii); SSR

96-6p. In short, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c).

### 1.    Non-Examining Medical Expert, Dr. Todorov

In December 2014, Dr. Todorov reviewed all the evidence in the record and issued an opinion that Plaintiff's impairments did not meet or equal any Listings. (Tr. at 1193, 1195). He further opined that in a workday Plaintiff could, among

other things, lift up to 50 pounds frequently and 100 pounds occasionally, sit up to 8 hours, stand up to 4 hours, walk up to 3 hours, use his right hand and both of his feet continuously, use his left hand at least occasionally, frequently crawl, and continuously engage in other postural activity. (Tr. at 1185-88). Dr. Todorov indicated that Plaintiff could tolerate frequent exposure to humidity, wetness, and vibrations and continuous exposure to other environmental conditions. (Tr. at 1189).

The ALJ considered this opinion and gave great weight to Dr. Todorov's conclusions that Plaintiff did not have an impairment or combination of impairments that met a Listing and could perform at least the exertional requirements of light work, finding them consistent with the medical evidence as a whole. (Tr. at 22, 24-25, 1185-86, 1193, 1195). He also adopted, in the RFC, the limitation to frequent handling with the left hand that Dr. Todorov assessed. (Tr. at 23, 1187). However, the ALJ ultimately concluded the record as a whole warranted slightly different non-exertional limitations than the ones that Dr. Todorov assessed with regard to climbing, balancing, stooping, crawling, crouching, reaching overhead, and exposure to environmental conditions. (Tr. at 23, 1185-89).

Although Plaintiff takes issue with the fact that Dr. Todorov is a non-examining medical expert, the substantial evidence detailed throughout the ALJ's decision, including Plaintiff's medical records, objective imaging, and Plaintiff's daily activities, supports the ALJ's reliance on most of Dr. Todorov's opinion in assessing Plaintiff's physical RFC. (Tr. at 23-26). For example, the ALJ found that Plaintiff's obesity, which Dr. Todorov did not discuss, was a severe impairment that caused limitations in addition to the other physical impairments that Dr. Todorov considered. (Tr. at 21-22, 25). In doing so, the ALJ actually found greater limitations with respect to crawling, climbing, balancing, stooping, crouching, reaching overhead, and exposure to environmental conditions than Dr. Todorov did. (Tr. at 23, 1185-89.) The ALJ also considered that Plaintiff underwent shoulder surgery in 2005 after incurring an injury while working as a police officer, that he was employed after the surgery for a number of years, that while he had at times decreased range of motion and shoulder weakness, his physical examinations generally revealed mild findings, such as a normal gait, a normal musculoskeletal exam, and full range of motion of his shoulders and cervical spine. (Tr. at 340-56.) Although the ALJ did not acknowledge Dr. Todorov's notation of limitations on reaching forward or laterally with the left arm, an ALJ is not required to refer to every piece of evidence in the record, *see Dyer*, 395 F.3d at 1211, and Plaintiff cites

to no objective medical or opinion evidence with respect to his left arm that would support greater limitations on reaching than what the ALJ found. The Court finds no error with the ALJ's treatment of Dr. Todorov's opinion.

### 2. Treating Spine Surgeon Dr. Stern

Dr. Stern performed a C5-6 anterior cervical discectomy on Plaintiff in September 2005. (Tr. at 26, 436, 468). Prior to that surgery, in April 2005, Dr. Stern wrote a letter to Plaintiff's employer listing several severe work-related limitations. (Tr. at 26, 437). However, two weeks after surgery, Dr. Stern noted that Plaintiff's strength had improved. (Tr. at 434). In November 2005, Plaintiff's left hand was stronger than before surgery, and Plaintiff was increasing activity and continuing to engage in physical therapy. (Tr. at 431). In February 2006, Dr. Stern indicated that Plaintiff had made "tremendous strides" from a neurological point of view and reported improved pain and readiness to return to light duty work at a desk job. (Tr. at 430). In March 2006, Dr. Stern wrote that Plaintiff's fusion was solid but, in light of Plaintiff's complaint of radicular symptoms and diffuse generalized weakness, numbness, and tingling, recommended conservative therapy, including pain management, and stated, "I believe he has a marked permanent disability." (Tr. at 429).

In July 2011, Dr. Stern noted that after Plaintiff's last visit in 2007, Plaintiff had successfully returned to work as a private investigator but eventually had stopped working again due to difficulty using his hands. (Tr. at 42, 427). Dr. Stern could not explain the "subjective deterioration," since the exam was non-focal, and a recent MRI was unchanged from the post-operative one taken in 2005. (Tr. at 427).

The ALJ explained that he gave Dr. Stern's April 2005 letter to Plaintiff's employer little weight because it was written eight years prior to Plaintiff's disability onset date, Plaintiff returned to work after surgery, and he subsequently underwent rehabilitation that improved his conditions. (Tr. at 26).

The ALJ had good cause to discount Dr. Stern's April 2005 letter. Plaintiff was gainfully employed as a private investigator for several years after Dr. Stern's assessments of limitations were rendered. (Tr. at 42.) Nor had Plaintiff received any treatment from any medical provider from 2007 until 2011. (Tr. at 24, 284-1172).[1] The evidence that the ALJ noted shows that the opinions of Dr. Stern, which predate Plaintiff's May 2013 alleged disability onset by nearly eight years, were stale in light of developments in the record. Additionally, the Court notes that because opinions on the ultimate issue of disability are reserved for the

---

[1] Although Plaintiff asserts in his reply brief that he continuously saw Dr. Littlejohn, his chiropractor, during this period, Dr. Littlejohn is not considered an "acceptable medical source" under the regulations, as explained, *infra*.

Commissioner, not doctors, *see supra*, the ALJ properly did not give Dr. Stern's 2006 statement that Plaintiff had a "marked permanent disability" any weight. (Tr. at 26, 429.)

### 3.    Treating Orthopedist Dr. Cordover

Plaintiff saw Dr. Cordover in December 2013, at which time Plaintiff had limited neck motion and reduced left arm strength, which Dr. Cordover related to Plaintiff's effort on examination. (Tr. at 1081). As the ALJ noted, Dr. Cordover suspected that some of Plaintiff's symptoms did not have a physical cause. (Tr. at 24, 1081). He ordered electrodiagnostic studies of Plaintiff's left arm, which showed no evidence of radiculopathy, neuropathy, or entrapment. (Tr. at 1118-20, 1128). Plaintiff returned to Dr. Cordover in July 2014, and he again had reduced arm strength but no other abnormal findings on examination. (Tr. at 1129). On Dr. Cordover's recommendation, Plaintiff attended physical therapy in September 2014 and experienced improvement to 4/5 on arm strength testing. (Tr. at 1140-58).

After he completed physical therapy, Plaintiff submitted to a September 2014 Functional Capacity Evaluation by an occupational therapist. (Tr. at 1132-36). The therapist noted that the testing that had been conducted permitted Plaintiff to self-limit his activity for pain or fear of injury, so the results were appropriately

considered "safe minimal levels of function as opposed to upper limit maximums." (Tr. at 1132). Even so, Plaintiff's performance during the testing indicated that, among other things, Plaintiff could frequently reach at desk level and sit constantly, had no apparent hand dexterity or coordination impairment, and could occasionally stand, climb stairs, kneel, crouch, and stoop. (Tr. at 1133).

Plaintiff argues that the ALJ committed reversible error by failing to articulate a specific weight he was assigning to Dr. Cordover's "opinions." Plaintiff is correct that as a general matter, the ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel*, 631 F.3d at 1179. However, not all progress notes from a doctor are considered "medical opinions" under the regulations. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairments, and [his] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

Dr. Cordover's treatment notes do not represent medical opinions to which the ALJ was required to assign weight. *See id.*; *Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987 (11th Cir. 2015) (holding that "[a]lthough the ALJ never stated the weight given to Dr. Frailing's treatment notes, the ALJ discussed the content of

Dr. Frailing's notes, showing that the ALJ considered and gave weight to this medical evidence" and "[w]hile the ALJ did not explicitly address this opinion, nothing in the ALJ's decision is inconsistent with it").

Even assuming for argument that Dr. Cordover's treatment notes did represent opinions to which the ALJ was required to assign a specific weight, any error is harmless because, as in *Laurey*, *supra*, the ALJ did discuss the treatment notes, however briefly, and nothing in them is inconsistent with Plaintiff's overall RFC. *See, e.g., Dyer*, 395 F.3d at 1211 ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *see also, e.g., Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 533-34 (11th Cir. 2014) (holding ALJ did not err by not specifically addressing all aspects of doctor's opinion because ALJ's decision showed ALJ considered doctor's opinion and claimant's medical condition as a whole) (citing *Dyer*, 395 F.3d at 1211); *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 844 (11th Cir. 2014) ("while the ALJ's reference to that ailment was short, he was not required to refer to every piece of evidence") (citing *Dyer*, 395 F.3d at 1211).

Importantly as well, the September 2014 Functional Capacity Evaluation was conducted by an occupational therapist, and not Dr. Cordover. *See* 20 C.F.R. § 416.913(d)(1); 20 C.F.R. § 404.1513(d) (occupational therapists are defined as

"other sources" rather than "acceptable medical sources"). Thus, the evaluation was not entitled to any special significance or consideration. *See* 20 C.F.R. §§ 404.1502, 404.1513(a), (d), 404.1527(a)(2). The Court also finds no error in the ALJ's treatment of Dr. Cordover's treatment notes.

## B.    Weight Given to "Other" Opinion

In June 2011, Dr. Littlejohn, Plaintiff's treating chiropractor, opined that Plaintiff could not lift more than five pounds and was limited in pushing and pulling with his left upper arm. (Tr. at 340-49.) Plaintiff last saw Dr. Littlejohn in December 2011, more than a year before his alleged disability onset date. (Tr. at 194, 602). At that time, Dr. Littlejohn recommended treatment with spinal manipulation and manual traction every three to four weeks, noted that Plaintiff reported that such treatments allowed him to minimize his use of prescription pain medications, and indicated that Plaintiff typically reported significant pain relief and improved ability to lie down, use a computer, drive, lift, reach overhead, and change position, for several days after such treatments. (Tr. at 602-03).

The ALJ may consider evidence from sources "other" than acceptable medical sources to show the severity of a claimant's impairments and how they affect his ability to work. *See* 20 C.F.R. §§ 404.1502, 404.1513(a). However, as noted in the previous section, the opinions of these other sources are not medical

opinions and are not entitled to any special significance or consideration. *See* 20 C.F.R. §§ 404.1513(a), 404.1527(f).

In accordance with the regulations, the ALJ did consider Dr. Littlejohn's treatment records and June 2011 opinion and gave the opinion little weight because it was inconsistent with the record as a whole and with his own treatment records. (Tr. at 26.) Substantial evidence supports this analysis. The conservative treatment recommended by Dr. Littlejohn undermines allegations that Plaintiff suffered disabling pain. *See Wolfe v. Chater*, 86 F.3d 1072, 1075 (11th Cir. 1996) (finding substantial evidence to discredit the claimant's pain testimony where treatment was conservative).

## C.    Credibility Determination and Hypothetical Posed to VE

Plaintiff described disabling pain that prevented him from working. (Tr. at 23.) When a claimant attempts to prove disability based on his subjective complaints, he must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of his alleged symptoms or evidence establishing that his medical condition could be reasonably expected to give rise to his alleged symptoms. *See* 20 C.F.R. § 416.929(a), (b); *Wilson v. Barnhart*, 284 F.3d 1219, at 1225–26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the

claimant establishes that he has an impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. § 416.929(c), (d); *Wilson*, 284 F.3d at 1225-26. This entails the ALJ determining a claimant's credibility with regard to the allegations of pain and other symptoms. *See id.*

The ALJ must "[explicitly articulate] the reasons justifying a decision to discredit a claimant's subjective pain testimony." *Moore v. Barnhart*, 405 F.3d 1208, 1212 n.4 (11th Cir. 2005). When the reasoning for discrediting is explicit and supported by substantial evidence, "the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

In making the credibility evaluation, the Commissioner considers objective medical evidence and information from the Plaintiff and treating or examining physicians, as well as other factors such as evidence of daily activities, the frequency and intensity of pain, any precipitating or aggravating factors, medication taken and any resulting side effects, and any other measures taken to alleviate the pain. *See* 20 C.F.R. §§ 404.1529, 416.929. A credibility determination is a question of fact: like all factual findings by the Commissioner, it is subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See*

*Hand v. Heckler*, 761 F.2d 1545, 1548-49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986).

In this case, the ALJ properly followed the two-step process in assessing Plaintiff's alleged symptoms and ultimately found that his complaints of disabling pain were not entirely credible. (Tr. at 24.) The ALJ articulated several reasons for discounting Plaintiff's subjective complaints, including that they were contradicted by Dr. Todorov's opinion, the consistently mild examination findings, and the opinion of a consultative examiner, Dr. Malhotra, which Plaintiff does not challenge on appeal. (*Id.*) Dr. Malhotra examined Plaintiff in June 2011 and opined that Plaintiff was in no acute distress, with a normal gait, full squat, normal station, and no use of an assisted device. (Tr. at 350-56.) He wrote that Plaintiff had 4/5 strength on the left hand and 5/5 on the right, mild tenderness in the cervical spine and slightly slow fine dexterity of the left hand. (*Id.*) The ALJ gave the opinion great weight because it was consistent with the record as a whole. (Tr. at 24.) Substantial evidence supports the ALJ's credibility determination.

Along the same lines, Plaintiff is not successful in his argument that the ALJ should have adopted the VE's answer to the following hypothetical question: "If I should find the subjective testimony today to be credible and supported by the

record, as a whole. Would the claimant be capable of performing his past work or any other work?" (Tr. at 80.) The VE responded, "No, your honor." (*Id.*) However, the ALJ was not required to accept the VE's testimony responding to this hypothetical question. *See Crawford*, 363 F.3d at 1161; *Wilson*, 284 F.3d at 1227. This is because the ALJ is not required to pose hypotheticals to the VE that include limitations unsupported by the evidence. *See Crawford*, 363 F.3d at 1161.

In order for a VE's answer to satisfy the substantial evidence standard, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). Importantly, however, an ALJ is not required to include symptoms that have been properly rejected because they lack the support in the record. *Ingram v. Comm'r of Soc. Sec.,* 496 F.3d at 1270 (11th Cir. 2007.) ("The hypothetical need only include 'the claimant's impairments,' not each and every symptom of the claimant. The characteristics the administrative law judge omitted are among those that [the claimant] alleged to suffer but were either supported by her medical records or were alleviated by medication.") Accordingly, the ALJ could discount the VE's response to the hypothetical question assuming solely for argument that Plaintiff's subjective pain testimony was credited.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Mr. Orapello's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON SEPTEMBER 18, 2018.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704